<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RAYMOND E. BROWN, | : | |
| | : | |
| Petitioner, | : | Civil No. 09-211 (RMB) |
| | : | |
| v. | : | |
| | : | **O P I N I O N** |
| BERNARD GOODWIN, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**BUMB**, District Judge:

**I.   <u>Introduction</u>**

Petitioner Raymond E. Brown ("Petitioner") is an involuntary committed individual held at the Adult Diagnostic & Treatment Center, Avenel, New Jersey.  Petitioner entered Avenel pursuant to the Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24 to -27.38.

Petitioner's original petition, executed pursuant to 28 U.S.C. § 2254(a), was received by the Clerk on January 12, 2009.  Since the allegations stated in that original petition suggested that numerous grounds Petitioner wished to raise were unexhausted and, in addition, that petition appeared untimely, this Court dismissed the original petition and directed Petitioner to file an amended pleading: (a) stating exhausted claims (hence, having unexhausted claims withdrawn or, in alternative, seeking stay); and (b)

clarifying the time line of Petitioner's state actions (or informing the Court of Petitioner's lack of record/recollection as to the same, so the Court would direct Respondents to produce the record) for the purposes of the statute of limitations analysis; the Court also notified Petitioner of his <u>Mason</u> rights.

In response, Petitioner submitted an amended petition ("Petition"); the Petition stated three grounds for Petitioner's challenges. Since the information provided therein suggested that Petitioner's challenges were timely, the Court directed Respondents to Answer the Petition. Respondents duly complied, asserting that Petitioner's grounds were without merit and had to be dismissed accordingly, and -- in addition -- maintaining that the Petition was subject to dismissal as partially unexhausted and untimely. <u>See</u> Docket Entries Nos. 9 and 10.

Consequently, the issues of timeliness, exhaustion and the merits raised in the Petition are currently before the Court. For the reasons detailed below, the Petition will be denied, and a certificate of appealability will not issue.

To ensure clarity of its discussion, the Court will treat Petitioner's challenges and Respondents' affirmative defenses out of order (that is, in comparison with the order utilized in the parties' pleadings), addressing first the issue of timeliness, than that of exhaustion, and then proceeding to the merits of Petitioner's claims, examining first Petitioner's challenges based

on the State's No Early Release Act, N.J. Stat. Ann. 2C:43-7.2 ("NERA"), and then his challenges based on performances of Petitioner's trial and appellate counsel.

## II.   **Standard of Review**

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

Moreover, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217 (April 24, 1996), limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. See 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

> (d)   An application for a writ of habeas corpus . . .
> shall not be granted with respect to any claim that
> was adjudicated on the merits in State Court
> proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to,
> or involved an unreasonable application of,
> clearly established Federal Law, as determined
> by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.   See Rompilla, 355 F.3d at 247.   On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply." Rolan, 445 F. 3d at 678.

Page 5 of  35

If the New Jersey courts adjudicated the petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to the petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Brown is in custody in violation of the Constitution or laws or treaties of the United States.  See 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), which prohibits a district court from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  A court must

look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).    Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.    Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[1]  See id. at 409-10.    "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F.

---

[1]

See also Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) ("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent") (citations and internal quotation marks omitted).

3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F. 3d 92, 100 (3d Cir. 2005)).

## III. **Background**

Addressing Petitioner's challenges raised during post-conviction relief ("PCR") proceedings, the Superior Court of New Jersey, Appellate Division, summarized the relevant facts as follows:

> On March 5, 2003, [Petitioner] entered a negotiated guilty plea to first degree aggravated sexual assault, [Section] 2C:14-2a. He is serving an eight-year term of imprisonment subject to a NERA parole ineligibility term. . . . At the time [Petitioner] entered his plea, he executed the applicable forms attendant to the plea. [Petitioner] acknowledged that he was subject to confinement at the Adult Diagnostic and Treatment Center ("Avenel"), if a psychological examination revealed that his conduct was characterized by a pattern of repetitive and compulsive behavior. [Petitioner] also acknowledged that he was subject to involuntary commitment at the conclusion of his sentence "if the court finds, after a hearing, that you are a sexually violent predator in need of involuntary civil commitment." [Petitioner] acknowledged that he was subject to the registration, address verification, notification, community supervision for life and DNA testing requirements of Megan's Law, N.J. [Stat. Ann. §§] 2C:7-1 to -21; 2C:43-6.4. [Petitioner] executed a supplemental plea form for cases governed by NERA. He acknowledged that he was pleading guilty to first degree aggravated sexual assault and would be "required to serve 85% of the sentence imposed for that offense before he will be eligible for parole on that offense." At the plea hearing, the assistant prosecutor reviewed the terms of the plea agreement. In the course of outlining the ramifications of the plea, the assistant prosecutor stated that [Petitioner] must serve eighty-five percent of the sentence and he could be committed for longer if he was subject to an involuntary commitment. Judge Donio [being Petitioner's trial judge,] asked [Petitioner] if his attorney had explained everything on the plea forms. [Petitioner] responded affirmatively. On July 18, 2003, [Petitioner] was

> sentenced in accordance with the plea agreement to an eight-year term subject to the NERA eighty-five percent parole ineligibility term.  Furthermore, in accordance with the Avenel assessment, the judge provided that [Petitioner] would serve his term at Avenel. [After the entry of judgment and sentencing, Petitioner] filed a notice of appeal.  The appeal was [withdrawn] because [Petitioner's appellate] counsel opined that the issues he sought to raise were best presented through a petition for post-conviction relief.  In his [trial-level PCR] petition, [Petitioner] asserted that he did not receive effective assistance of counsel because counsel . . . failed to fully advise him of the provisions of the [SVPA, relying on] <u>State v. Bellamy</u>, 178 N.J. 127 (2003). In his oral opinion, Judge Donio held that [Petitioner] was adequately informed of the possibility of civil commitment at the conclusion of his penal sentence pursuant to the SVPA.  The judge . . . rejected the contention that [Petitioner] was uninformed of all of the consequences, direct and indirect, of his plea or that trial counsel was ineffective.

<u>State v. Brown</u>, 2008 WL 2050808, at *1 (N.J. Super. App. Div. May 15, 2008).

## IV.  <u>Timeliness of the Petition</u>

Respondents raise two challenges as to the timeliness of the Petition.  One of the challenges asserts that the Petition became untimely during the period of administrative termination that took place between this Court's dismissal of Petitioner's original petition and Petitioner's filing of the instant Petition.   <u>See</u> Docket Entry No. 9, at 15 (noting that the Court's dismissal of Petitioner's original petition allowed for Petitioner's filing of a timely amended petition, and -- upon putting the emphasis of the word "timely" -- asserting that the instant Petition was filed out of time).

Respondents' position to that effect is without merit, since the Court's dismissal of the original petition was: (a) a dismissal of the original pleadings, as drafted, rather than a conclusive determination, see Docket Entry No. 2, at 19-20 and 22 (stressing that the Court retained its jurisdiction over this matter in order to determine whether Petitioner, in error, omitted the information verifying timeliness and exhaustion of his claims); and (b) expressly made for the purpose of allowing Petitioner an opportunity to clarify the timeliness and exhaustion aspects of his original pleadings. See id. at 20 (explaining that the Court's leave to file an amended petition was granted because, "in the event Petitioner [was] of opinion that the [original] Petition [was] timely," the Court had to provide Petitioner with an opportunity to show cause as to why it should not be dismissed as untimely).

Consequently, the period of termination between  the Court's dismissal of the original petition and the Clerk's receipt of the instant Petition was an administrative rather than a legal measure; with the same token, the Court could have just held this matter open until receipt of the instant Petition.  In light of the foregoing, it would be unseemly for the Court to "entrap" Petitioner in the thickets of purely bureaucratic measures intimately associated with efficient court administration but wholly divorced from any legal grounds. Accord Urcinoli v. Cathel,

546 F. 3d 269, 272 (3d Cir. 2008).[2]   Therefore, Respondents'
argument based on expiration of Petitioner's statute of limitation
after Petitioner's submission of his original petition to his
prison officials for mailing to this Court is rejected, as without
merit.

In contrast, Respondents' alternative argument asserting
untimeliness of the instant Petition (even if it is deemed filed on
the date of Petitioner's submission of his original petition to his
prison officials) is not without merit.

Here, Petitioner took a plea but, nonetheless, elected to file
a direct appeal challenging his judgment of conviction.  However,
Petitioner filed that direct appeal out of time allowed by the
state procedural rules, i.e., nunc pro tunc.  Moreover, the state
court, with which such nunc pro tunc appeal was filed (that is, the
Superior Court of New Jersey, Appellate Division), did not have an

---

[2] In Urcinoli, the Court of Appeals for the Third Circuit
determined that equitable tolling was warranted where the
District Court's sua sponte dismissal of the first § 2254
petition as mixed (which dismissal occurred after the one year
limitations period had already expired), prevented the petitioner
from pursuing his exhausted claims in the following petition that
contained only exhausted claims but was, obviously, submitted out
of time.  In contrast, in Taylor v. Horn, 504 F. 3d 416, 426-27
(3d Cir. 2007), the Third Circuit affirmed the District Court's
ruling that a § 2254 petition but noted that Taylor's filing of
an exhausted petition would relate back under Federal Rule of
Civil Procedure 15(c), equitable tolling was warranted.
Analogously, in Brinson v. Vaughn, 398 F. 3d 225, 230 (3d Cir.
2005), the Court of Appeals held that an extraordinary
circumstance exists "where a court has misled a party regarding
the steps that the party needs to take to preserve a claim."

opportunity to rule on the timeliness (or untimeliness) of Petitioner's direct appeal simply for the reason that Petitioner withdrew his direct appeal prior to entry of any Appellate Division's decision.

Respondents argue that Petitioner's one-year period of limitations (for the purposes of the instant matter) began to run on the date when Petitioner's time to file a *timely* direct appeal expired. See Docket Entry No. 9, at 14. Petitioner, in contrast, calculates his period of limitations starting from the date of his withdrawal of his nunc pro tunc appeal (which might, very well, have been dismissed by the Appellate Division as untimely had the state court had an opportunity to rule on the timeliness issue). See Docket Entry No. 5-2, at 2. This distinction in the starting date for the calculation of Petitioner's one-year AEDPA period of limitations makes all the difference, since this difference places the date of Petitioner's submission of his original petition in this matter: (a) out of the one-year allowed by the AEDPA if Respondents' version of the starting date is plugged in the calculation; and (b) within the AEDPA period, if Petitioner's version of the starting date is plugged in.

Section 2244(d)(2) requires statutory tolling under the following circumstances: "The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall

not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis supplied). An application is "filed" when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (citations omitted). However,

> an application is "*properly* filed" when its delivery and acceptance are *in compliance with the applicable laws and rules governing filings*. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Artuz, 531 U.S. at 8-9 (citations omitted) (original emphasis preserved, additional emphasis supplied).

Hence, the question here is whether Petitioner's nunc pro tunc direct appeal was "*properly* filed." Had the state courts found Petitioner's nunc pro tunc direct appeal untimely, this Court's inquiry would be easy in the sense that Petitioner's direct appeal would not be properly filed and, consequently, Respondents' starting date (for the purposes of calculating the AEDPA period in this matter) would be facially validated. See, e.g., Tozer v. Power, 2008 U.S. Dist. LEXIS 109475 (D.N.J. June 30, 2008) (examining a scenario where the petitioner's direct appeal was dismissed by the state courts as untimely and, accordingly, calculating the AEDPA period from the date when the petitioner's time to file his direct appeal expired). Conversely, had the state

courts determined that, under the state law, Petitioner's <u>nunc</u> <u>pro</u> <u>tunc</u> direct appeal was timely, e.g., as a result of the state law governing equitable tolling, this Court's inquiry would be equally easy in the sense that Petitioner's version of the starting date would be facially validated. However, no state decision was entered to make this Court's task that easy.

Rather, this Court's task is particularly complex in light of the fact that the state courts requirements for grant of equitable tolling are notably more lenient than the corresponding requirements of AEDPA, <u>e.g.</u>, the state law allows grant of equitable tolling upon showing of "excusable neglect," <u>see</u>, <u>e.g.</u>, <u>State v. Norman</u>, 405 N.J. Super. 149, 158-59 (N.J. Super. App. Div. 2009) ("[t]o overcome the procedural . . . , the defendant must show that the delay . . . was attributable to excusable neglect. . . . To determine whether the defendant has asserted a sufficient basis for relaxing . . . time restraints, a court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the defendant's claim in determining whether there has been an injustice sufficient to relax the time limits. Excusable neglect provides the means for a court to address and correct a criminal judgment where adherence to it would result in an injustice"), while the very same "excusable neglect" standard was expressly found insufficient by the Court of Appeals for the

purposes of equitable tolling analysis under the AEDPA.   See <u>LaCava</u>
<u>v. Kyler</u>, 398 F.3d 271, 275-276 (3d Cir. 2005).

Since -- regardless of the Court's order dismissing the
original petition as untimely and expressly directing Petitioner to
articulate his grounds for equitable tolling -- the instant
Petition is silent as to Petitioner's position why he should have
been granted equitable tolling, and Petitioner did not provide any
explanation of his position as to why, under the state law, he
should have been qualified for equitable tolling as to his direct
appeal, this Court finds Respondents' argument meritorious.   The
Court, thus, dismisses the Petition as untimely under the
presumption that Petitioner's silence indicates Petitioner's
inability to articulate any grounds for equitable tolling with
regard to his direct appeal.

However, having no certainty that its determination would
necessarily correspond to the analysis that might have been
conducted by the state court (and to the outcome of that analysis),
this Court finds it prudent to examine, in alternative, the merits
of the instant Petition.

As the discussion provided below illustrates, because the
claims asserted in the Petition are without merit, the overall
result of the Court's analysis, be it based on the AEDPA statute of
limitations or on the merits of the Petition, is the same.

Therefore, regardless of the path taken by this Court, the issuance of a writ of habeas corpus in this matter is unwarranted.

**V.    Exhaustion of the Petition**

Respondents also raise, as an alternative affirmative defense, Petitioner's failure to exhaust his NERA challenges, that is, the ground which Petitioner included in the Petition at hand regardless of the Court's detailed explanation (provided in the order dismissing the original petition) that Petitioner must either: (a) withdraw all his unexhausted claims; or (b) seek a stay and exhaust his unexhausted grounds in all three levels of the state court.

Respondents ask for this Court's dismissal of the entire instant Petition as "mixed," i.e., as containing both exhausted and unexhausted grounds.   The Court, however, cannot do that for the following reasons:

> Faced with [a] "mixed" petition, the District Court ha[s] four options:  [(1)] dismiss the petition without prejudice under Rose [v. Lundy, 455 U.S. 509 (1982), unless such dismissal would mean that the petitioner's amended petition would necessarily be bound for dismissal as untimely, see Urcinoli, 546 F. 3d 269], [(2)] "stay and abey" under Rhines [v. Weber, 544 U.S. 269 (2005)], [(3)] allow [the petitioner] to delete his unexhausted claims, see Rhines, 544 U.S. at 278, or, [(4)] if all of his claims are meritless, deny the petition under § 2254(b)(2) (allowing denial of a petition on the merits "notwithstanding the failure of the applicant to exhaust . . .").

Mahoney v. Bostel, 2010 U.S. App. LEXIS 3916, at *5-6 (3d Cir. N.J. Feb. 24, 2010) (footnote omitted).

Since, while dismissing Petitioner's original petition, the Court already allowed Petitioner an opportunity to delete his unexhausted claims, but Petitioner, nonetheless, elected to include his NERA challenges in the instant Petition, the Mahoney option "(3)" is facially inapplicable to the case at bar.  Similarly, the Mahoney option "(1)" is unavailable to the Court in light of the fact that, as of now, Petitioner's period of limitations has unquestionably expired.  Thus, under the Mahoney option "(2)," the Court has to assess Petitioner's NERA challenges to determine whether the stay-and-abeyance allowed for in Rhines is applicable to this matter (which would be true had Petitioner's unexhausted NERA challenges presented a "colorable" claim) but, if the answer to that inquiry is "no," than the Court may dismiss the entire Petition under the Mahoney option "(4)."

Since, as the discussion below illustrates, Petitioner's ground based on the NERA is without merit, as are the rest of Petitioner's grounds, the entire Petition will be dismissed under § 2254(b)(2), while Respondents' request to dismiss the Petition as "mixed" will be denied.  See id.

## VI.  **Petitioner's NERA Ground Is Without Merit**

Spanning over two and a half pages, single-spaced, Petitioner's NERA-based claim could be reduced to the chain of the following loosely-related grounds: (1) the NERA shall be read as envisioning imposition of an enhanced sentence only for commission

of crimes that qualify as "crimes of violence"; (2) the prior version of the NERA envisioned two ways for imposition of an enhanced sentence, i.e., such sentence could be imposed upon finding that the defendant inflicted a serious bodily injury or that he utilized a deadly weapon during commission of his crime; (3) the current version of the NERA substituted the previous two-way inquiry by a list of specific criminal offences provided in Subsection "(d)" (this list of offenses includes the crime of aggravated sexual assault, that is, the crime to which Petitioner pled guilty); and (4) current Subsection "(d)" violates the principles annunciated in Apprendi and Blakely (and in their companion state and federal cases). See Docket Entry No. 5-2, at 6-8.

"[No] federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the state." Johnson v. Fankell, 520 U.S. 911, 916 (1997); see also Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). However, the highest state court's determination whether a statute, as construed, complies with the federal constitution is not immune from federal review; this applies, inter alia, to state sentencing regimes.

Modern sentencing law has been reformulated due to a wave of federal and state sentencing cases that have been decided over the past eight years.

> In _Apprendi v. New Jersey_, [the Supreme] Court held that,
> under the Sixth Amendment, any fact (other than a prior
> conviction) that exposes a defendant to a sentence in
> excess of the relevant statutory maximum must be found by
> a jury, not a judge, and established beyond a reasonable
> doubt, not merely by a preponderance of the evidence.
> _See_ 530 U.S. 466, 490 [(2000)].   The Court has applied
> the rule of _Apprendi_ to facts subjecting a defendant to
> the death penalty [in] _Ring v. Arizona_, 536 U.S. 584,
> 602 [(2002)], facts permitting a sentence in excess of
> the "standard range" under [a state sentencing regime in]
> _Blakely v. Washington_, 542 U.S. 296, 304-305 [(2004)],
> and facts triggering a sentence range elevation under the
> then-mandatory [federal sentencing regime in] _United
> States v. Booker_, 543 U.S. 220, 243-244 [(2005)].

_Cunningham v. California_, 549 U.S. 270, 127 S. Ct. 856, 857 (2007)

(continuing the _Apprendi_-_Booker_ line of cases).[3]

The difference between _Apprendi_ and _Blakely_ is as follows: in

_Apprendi_, the Supreme Court found that New Jersey's "hate crime"

law violated the Due Process Clause of the Fourteenth Amendment,

and the notice and jury trial guarantees of the Sixth Amendment,

because it allowed a judge to find facts by a lower standard of

proof than would be required of a jury and to increase a

defendant's sentence beyond the "statutory maximum" for that

particular crime.  The Court thus held that "other than the fact of

a prior conviction, any fact that increases the penalty for a crime

---

[3]

Cunningham was a challenge to _People v. Black_, 113 P.3d 534
(Cal. 2005), in which the California Supreme Court found that
California's upper term determinate sentencing law procedure was
constitutional.

beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."[4] <u>Apprendi</u>, 530 U.S. at 525.

Four years later, in <u>Blakely</u>, the Supreme Court clarified what "statutory maximum" means for the purposes of <u>Apprendi</u>-based analysis. <u>See</u> <u>Blakely</u>, 542 U.S. 296. It means the highest possible sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," <u>i.e.</u>, that the "statutory maximum" is the maximum sentence a judge may impose without finding any additional facts, that is, except by taking notice of prior convictions. <u>See</u> <u>id.</u> at 301, 303. (During its next term, the Court held, in <u>Booker</u>, that the rationale of <u>Blakely</u> applied to the federal sentencing regime.)

Seven months after issuance of <u>Booker</u>, the Supreme Court of New Jersey decided a trilogy of cases applying the principles formulated by the Supreme Court in <u>Apprendi</u> and <u>Blakely</u> to the state regime. <u>See</u> <u>State v. Franklin</u>, 184 N.J. 516 (2005); <u>State v. Abdullah</u>, 184 N.J. 497 (2005); <u>State v. Natale</u>, 184 N.J. 458 (2005). In <u>Natale</u> (that is, the state precedent upon which Petitioner relies), the Supreme Court of New Jersey eliminated the

---

[4]

The fact of prior convictions has been excluded from those sentencing facts which a jury must determine ever since <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). Although <u>Almendarez-Torres</u> has been criticized, every subsequent Supreme Court sentencing decision, has continued to exempt prior convictions from those facts which must be judicially determined. See <u>Cunningham</u>, 127 S. Ct. at 871; <u>Booker</u>, 543 U.S. at 244; <u>Blakely</u>, 542 U.S. at 301; <u>Apprendi</u>, 530 U.S. at 490.

presumptive term from New Jersey's sentencing process, holding that
-- since the presumptive term was the "statutory maximum" -- a
sentence above that term based solely on a judicial fact-finding of
aggravating factors, other than recidivism, would violate the Sixth
Amendment.  See Natale, 184 N.J. at 466.

Here, Petitioner relies on Natale[5] to assert that the list of
specific offenses included in the NERA is unconstitutional because
the finding as to whether to impose an enhanced sentenced is not a
jury finding reached under the "beyond a reasonable doubt"
standard.  (It is unclear whether Petitioner wishes to challenge
the NERA as drafted or as applied to him personally, since
Petitioner's arguments mix these aspects.  See Docket Entry No. 5-
2, at 6-8.)  Petitioner asserts that such unconstitutionality
ensues from the possibility that the list of crimes included in the
Subsection "(d)" of the NERA might include offenses that are not
"truly" crimes of violence.  See id. at 7.

Petitioner's argument is without merit for a multitude of
reasons.

First, the NERA language is silent as to imposition of
enhanced sentences with regard to the offences that must qualify as
"crimes of violence"; rather -- in no ambiguous terms -- the NERA

---

[5]   Given that Natale is a state law having no relevance to §
2254 review currently conducted, the Court presumes that
Petitioner wished to invoke Blakely and Apprendi (that is, the
precedents issued by the United States Supreme Court) as his
bases, since Petitioner correctly relates Natale to Apprendi.

is titled "Mandatory service of 85% of sentence for *certain offenses*," see N.J. Stat. Ann. § 2C:43-7.2 (emphasis supplied), hence rendering the issue of whether the offense is a "crime of violence" entirely irrelevant.  Moreover, each offense included in the NERA list of crimes (contained in the Subsection "(d)") could easily be qualifies as "crime of violence," that is, had such analysis been relevant.[6]  With the same token, had such analysis

---

[6]  Subsection (d) of the NERA reads as follows:
d.    The court shall impose sentence pursuant to subsection a. of this section upon conviction of the following crimes or an attempt or conspiracy to commit any of these crimes:
(1)   N.J.S.2C:11-3, murder;
(2)   N.J.S.2C:11-4, aggravated manslaughter or manslaughter;
(3)   N.J.S.2C:11-5, vehicular homicide;
(4)   subsection b. of N.J.S.2C:12-1, aggravated assault;
(5)   subsection b. of section 1 of P.L.1996, c.14 (C.2C:12-11), disarming a law enforcement officer;
(6)   N.J.S.2C:13-1, kidnaping;
(7)   subsection a. of N.J.S.2C:14-2, aggravated sexual assault;
(8)   subsection b. of N.J.S.2C:14-2 and paragraph (1) of subsection c. of N.J.S.2C:14-2, sexual assault;
(9)   N.J.S.2C:15-1, robbery;
(10)      section 1 of P.L.1993, c.221 (C.2C:15-2), car jacking;
(11)      paragraph (1) of subsection a. of N.J.S.2C:17-1, aggravated arson;
(12)      N.J.S.2C:18-2, burglary;
(13)      subsection a. of N.J.S.2C:20-5, extortion;
(14)      subsection b. of section 1 of P.L.1997, c.185 (C.2C:35-4.1), booby traps in manufacturing or distribution facilities;
(15)      N.J.S.2C:35-9, strict liability for drug

been relevant, Petitioner would lack standing to challenge applicability of the NERA to offenses other than that to which he pled guilty, that is, first degree aggravated sexual assault, N.J. Stat. Ann. 2C:14-2a, the provision which -- in no ambiguous terms -- defines the conduct which could easily be qualified as a "crime of violence."[7]  While Petitioner seemingly aims to assert that the

---

|      |                                                                                                 |
|------|-------------------------------------------------------------------------------------------------|
|      | induced deaths;                                                                                 |
| (16) | section 2 of P.L.2002, c.26 (C.2C:38-2), terrorism;                                             |
| (17) | section 3 of P.L.2002, c.26 (C.2C:38-3), producing or possessing chemical weapons, biological agents or nuclear or radiological devices; or |
| (18) | N.J.S.2C:41-2, racketeering, when it is a crime of the first degree.                           |

[7]  The Subsection "(d)" of the statute reads as follows:

An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
(1)  The victim is less than 13 years old;
(2)  The victim is at least 13 but less than 16 years old; and
   (a)  The actor is related to the victim by blood or affinity to the third degree, or
   (b)  The actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional, or occupational status, or
   (c)  The actor is a resource family parent, a guardian, or stands in loco parentis within the household;
(3)  The act is committed during the commission, or attempted commission, whether alone or with one or more other persons, of robbery, kidnaping, homicide, aggravated assault on another, burglary, arson or criminal escape;
(4)  The actor is armed with a weapon or any object fashioned in such a manner as to lead the victim to reasonably believe it to be a weapon and

Page 23 of  35

aggravated sexual assault he committed was "not all that violent" (presumably, in the sense that, short of unconsentable bodily penetration, his victim did not suffer a more severe bodily injury), Petitioner's personal definition of "crime of violence" does not comport with the existing law, e.g., with the definition employed by the Supreme Court, which defined a "crime of violence" as a criminal-in-nature voluntarily committed physical act against another. See Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) (discussing the issue of what offense constitutes a "crime of violence" for the purposes of collateral consequences of that offense, and observing that, "[w]hile one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would 'use . . . physical force against' another when pushing him; however, we would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him"). Since, here, there is no question that Petitioner did not "accidentally" commit a sexual assault against

---

        threatens by word or gesture to use the weapon or object;
(5)  The actor is aided or abetted by one or more other persons and the actor uses physical force or coercion;
(6)  The actor uses physical force or coercion and severe personal injury is sustained by the victim;
(7)  The victim is one whom the actor knew or should have known was physically helpless, mentally defective or mentally incapacitated.

his victim, Petitioner's offense clearly falls within even the most narrow restrictive of the term "crime of violence." Compare United States v. Allen, 409 F. Supp. 2d 622 (D. Md. 2006) (where the defendant, relying on Leocal, asserted that a mere state of possession cannot be qualified as a conduct "violent" in its nature, since such possessory condition, in and by itself, encompassed no mens rea to inflict harm on another human being or even to perform any voluntary act upon another, the court concluded that possessory offense constituted a "crime of violence" for purposes of the Bail Reform Act, 18 U.S.C. § 3141 et seq., reasoning that "statutes and rules created in different contexts and for different purposes may have different meanings, notwithstanding the use of similar words," citing United States v. Powers, 318 F. Supp. 2d 339, 342 (W.D. Va. 2004), and United States v. Dillard, 214 F.3d 88, 92-93 (2d Cir. 2000)).

Second, for the purposes of this Court's Apprendi-Blakely analysis, any debate as to whether the NERA relates to "crimes of violence" is a purely academic exercise, wholly irrelevant to the gist of the inquiry at hand. For the purposes of Apprendi-Blakely, the current list of offenses included in the NERA necessarily implies that, in order to be subjected to an enhanced sentence, the defendant must be first found guilty, beyond a reasonable doubt, of at least one of the offenses listed in the Subsection "(d)" of the NERA (or must plead guilty to at least one of such offenses).

Therefore, the very act of the jurors finding the defendant guilty beyond a reasonable doubt of the underlying offense (or the very act of the defendant taking a guilty plea) automatically satisfies the Apprendi-Blakely requirement: this is so simply because the finding of (or pleading) "guilty" already yields the required beyond-a-reasonable-doubt finding for the purposes of the NERA. Simply put, the current version of the NERA, as drafted, necessarily satisfies the Apprendi-Blakely requirement.

Hence, Petitioner's constitutional challenges to the current language of the NERA are facially meritless. As to Petitioner's disappointment with the amendment of the NERA language, that disappointment is irrelevant to his Apprendi-Blakely challenge.[8] Therefore, Petitioner's ground based on the NERA will be dismissed.

_____

[8] The Court cannot exclude the possibility that Petitioner might have wished to raise an ex post facto challenge based on the change in the NERA language. However, no ex post facto challenges or supporting facts are articulated in the Petition (and, certainly, none are exhausted), and -- unlike in the matters governed by Rule 8 -- this Court cannot construe Petitioner's claims liberally. "Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified." See 28 U.S.C. § 2254 Rule 2(c); accord Keller v. Larkins, 251 F.3d 408, 413-415 (3d Cir. 2001) (denial of a claim asserting lack of "fair trial" is proper because such claim does not state a federal constitutional violation) (relying on Duncan v. Henry, 513 U.S. 364, 366 (1995) (holding that a claim of "miscarriage of justice" does not qualify as a federal constitutional claim)). Therefore, Petitioner's NERA-based ground, paraphrased solely in terms of an Apprendi-Blakely challenge, will not be subjected by this Court to a multitude of alternative constructions that might implicate constitutional provisions other than the one invoked by Petitioner.

## VII. __Petitioner's Challenges to Performance of His Counsel__

Under __Strickland v. Washington__, 466 U.S. 668 (1984), a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel' s conduct. __See__ __id.__ at 688-89; __Jacobs v. Horn__, 395 F.3d 92, 102 (3d Cir. 2005); __Keller v. Larkins__, 251 F.3d 408, 418 (3d Cir.), __cert.__ __denied__, 534 U.S. 973 (2001). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." __Strickland__, 466 U.S. at 688.

Claims of ineffective assistance of appellate counsel are similarly evaluated under the __Strickland__ standard. __See__ __Lewis v.__ __Johnson__, 359 F.3d 646, 656 (3d Cir. 2004). While an appellate counsel does not have a duty to advance every non-frivolous argument that could be made, __see__ __Jones v. Barnes__, 463 U.S. 745, 754 (1983), a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that [the appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." __Mayo v.__ __Henderson__, 13 F.3d 528, 533 (2d Cir. 1994).

However, Respondents are correct in their observation that Petitioner's challenges do not turn on the intricacies of the __Strickland__ test or on this Court's __de__ __novo__ evaluation of the

records of Petitioner's state proceedings; rather, the threshold question here is whether the state courts made not unreasonable findings as to the underlying facts, and whether Petitioner met his burden at casting these facts off.

Under § 2254, as amended by the AEDPA, federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts. See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).   Hence, federal courts are required to apply a presumption of correctness to factual determinations made by state tribunals.   See 28 U.S.C. § 2254(e)(1).   Indeed, this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196.  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Here, Petitioner's assertion that his trial counsel failed to inform him about the possibility of civil commitment upon expiration of Petitioner's prison term was addressed in detail during Petitioner's PCR proceedings.  The state courts examined: (a) the plea forms and supplemented plea forms executed by Petitioner (and these plea forms, indeed, duly notified Petitioner of the possibility of civil commitment); (b) Petitioner's trial

judge's questions to Petitioner verifying that Petitioner's attorney had explained everything on the plea forms to Petitioner, and Petitioner's affirmation of the same; (c) Petitioner's acknowledgment that he was subject to confinement at Avenel, if a psychological examination revealed that his conduct was characterized by a pattern of repetitive and compulsive behavior; and (d) the prosecutor's statements made during the plea hearing reviewing the terms of the plea agreement and stating that Petitioner could be civilly committed upon expiration of his prison term.   See State v. Brown, 2008 WL 2050808, at *1; accord Docket Entries Nos. 9-2 and 10-1 (replicating the relevant record).

In light of the foregoing, the state courts at both trial and appellate levels made, not unreasonably indeed, factual finding that Petitioner was adequately informed of the possibility of civil commitment at the conclusion of his penal sentence.   See id.   In contrast, Petitioner offers this Court no evidence whatsoever, and certainly no clear and convincing evidence, suggesting that this factual finding was erroneous.   See generally, Docket Entry No. 5-2.   Rather, Petitioner's assertions are limited to a bold conclusion "that counsel was ineffective for failing to inform [Petitioner,] before he pled guilty[,] that he faced a probability of indefinite civil commitment."   Id. at 2.   A more detailed examination of the Petition suggests that the only "fact" Petitioner is offering in support of his conclusion is Petitioner's

opinion that his counsel balanced the favorable prison term offered at the plea bargain stage against the possibility of civil commitment in such fashion of which Petitioner, in retrospect, became less enthusiastic than he was at the time of his acceptance of the plea. See id. at 2-4 (expressing, inter alia, Petitioner's disappointment with retrospective assessment of the fact that "[t]he [trial] court and counsel made it clear to {Petitioner] that he was saving himself years of time compared to the loss of liberty he would face if convicted by the jury of the same charges").

However, Petitioner's loss of excitement about the deal he made, or his assertion that he was entering his plea without "sufficient understanding of penal consequences," id. at 4, does not provide this Court with even any evidence that Petitioner was uninformed of the possibility of civil commitment; this is so because: (a) Petitioner's statements expressing retrospective disappointment suggest that Petitioner was duly informed;[9] (b) Petitioner's counsel could reasonably presume that Petitioner had "sufficient" understanding of the relevant information provided to

---

[9] The only "evidence" Petitioner provides to this Court is his current regret that the possibility of civil commitment was not presented to him in the most gruesome and grievous terms. However, the Strickland standard does not obligate counsel to stress the negative aspects of a plea over the favorable ones. See generally, Strickland v. Washington, 466 U.S. 668. Indeed, any plea bargain, by definition, encompasses negative terms -- rather than grants complete acquittal -- and counsel's duty is to convey the information rather than to place such emphases of which his/her clients would still be willing to approve years down the road.

him, granted that Petitioner was not mentally incapacitated at the time of his plea (or even at any time before or thereafter); and (c) civil commitment cannot be qualified as a "penal consequence."

Weighted against the state courts' factual finding, Petitioner's allegations do not operate as clear and convincing evidence to the contrary.   In fact, the gist of Petitioner's allegations tend to support Respondents' position.   Since Petitioner failed to meet his burden establishing that he was not notified by his counsel about the possibility of civil commitment, Petitioner's challenges against his trial attorney must be dismissed as facially meritless.

This finding is particularly warranted in light of the United States Supreme Court's recent decision in Padilla v. Kentucky, 176 L. Ed. 2d 284 (March 31, 2010).   In Padilla, the Supreme Court broke new ground in holding in a 7-2 decision that a criminal defense counsel had failed to provide his non-citizen client effective assistance when the counsel did not tell the client that he was almost certain to be removed from the United States to his country of origin if he pled guilty.   The decision was the first where the Court has applied the Strickland standard to a attorney's failure to advise the client about a "collateral" consequence of conviction, meaning, about something other than imprisonment, fine, probation and the like (collectively known as "direct" consequences of conviction).

However, while <u>Padilla</u>'s implications for cases involving removal are clear, the holding of <u>Padilla</u> seems not importable -- either entirely or, at the very least, not readily importable -- into scenarios involving collateral consequences other than deportation. <u>See</u> <u>Padilla v. Kentucky</u>, 176 L. Ed. 2d at 293-94 (stressing that the measure of deportation is unique at its being so intimately related to the underlying criminal conviction that the measure is ill-suited for the "direct/collateral consequences" distinction); <u>accord</u> 8 U.S.C. § 1226 (directing mandatory civil detention upon expiration of the alien's prison term).[10]

Since the <u>Padilla</u> scenario based on removal is qualitatively different from the civil commitment scenario played under the SVPA (which necessarily requires an *individualized assessment* of each person that might -- but not must -- be civilly committed upon expiration of his prison term), it appears that, under the holding of <u>Padilla</u>, Petitioner's claims against his counsel would be without merit even if the Court were to ignore all factual findings made by the state courts and to presume, hypothetically, that

---

[10] Section 1226 provides, in relevant part, that "[t]he Attorney General shall take into custody any alien who is deportable by reason of having committed any offense covered in . . . 8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D), [or] is deportable under . . . 8 U.S.C. § 1227(a)(2)(A)(i) on the basis of an offense for which the alien has been . . . sentenced to a term of imprisonment of at least 1 year." The statutory utilization of the word "shall" removes the Attorney General's discretion as to taking aliens convicted of qualified criminal offense in custody.

Petitioner's counsel actually failed to notify Petitioner of the possibility of civil commitment. Indeed, in order to state his claim, Petitioner relies not on a federal provision but on <u>State v. Bellamy</u>, 178 N.J. 127 (2003), a *state* precedent, and its *state* genesis and progeny.[11] <u>See</u> Docket Entry No. 5-2, at 4. However, the fact that the state law allows a criminal defendant more rights than the United States Constitution does not make a violation of that state law a constitutional offense. <u>See</u> <u>Virginia v. Moore</u>, 553 U.S. 164 (2008) (expressly drawing the distinction between broader civil rights triggered by state law and narrower rights ensuing from the federal Constitution); <u>see also</u> <u>Johnson</u>, 117 F.3d at 110 ("[E]rrors of state law cannot be repackaged as federal errors").

Hence, Petitioner's challenges against his trial counsel are without merit and will be dismissed. Finally, Petitioner's challenges against his appellate counsel will similarly be dismissed. Here, Petitioner asserts that his appellate counsel was ineffective because the appellate counsel expressed the opinion that Petitioner's challenges against his trial counsel (namely,

---

[11] In <u>Bellamy</u>, the Supreme Court of New Jersey held that civil commitment under the SVPA is neither a penal nor a direct consequence, but -- nonetheless -- fundamental fairness requires that a trial court, prior to accepting a plea to a predicate offense under the SVPA, must ensure that the defendant understands that there is a possibility of future commitment under the SVPA, and that the commitment may be for an indefinite period of time, up to and including lifetime commitment.

that the trial counsel did not "sufficiently" notify Petitioner of the possibility of Petitioner's civil commitment upon expiration of Petitioner's prison term) would be better suited for PCR proceedings than for a direct appeal.  Granted that Petitioner was availed to the opportunity to raise his challenges against the trial counsel during his PCR and had these dismissed by all three levels of the state court as meritless, the appellate counsel's decision to omit these challenges from Petitioner's direct appeal did not render the assistance of Petitioner's appellate counsel ineffective, especially granted the high likelihood that Petitioner's direct appeal would be dismissed as untimely, regardless of its content.

## VIII. <u>Certificate of Appealability</u>

In light of the Court's determinations as to the merits of the Petition, the Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).  In alternative, deeming the Petition untimely, the Court denies a certificate of appealability under <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), since -- if Petitioner's silence in the instant Petition indicates Petitioner's inability to articulate valid reasons for equitable tolling of the time requirements posed by the state law with regard to direct

appeal, jurists of reason would not find it debatable that this Court was correct in its procedural ruling.

**IX.  Conclusion**

For the foregoing reasons, the Court will deny the Petition. No certificate of appealability will issue.

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**

Dated: May 11, 2010